IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **WRI/LONE STAR, INC.** | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. \_\_5:21-cv-132\_\_ |
| **DOVER HOLDING, LLC,** | § § § | |
| Defendant. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND
## REQUEST FOR DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff WRI/Lone Star, Inc. complains of Defendant Dover Holding, LLC and alleges as follows:

### I. PARTIES

1. Plaintiff WRI/Lone Star, Inc. ("WRI") is a corporation that is organized under the laws of the State of Texas.

2. Defendant Dover Holding, LLC ("Dover") is a limited liability company that is organized under the laws of the State of New York. Dover has its principle office located at 119 W. 57th Street, Suite 906, New York, New York. Dover is authorized to transact business in Texas and, as explained below, has transacted business in Texas. Dover may be served with process by serving its registered agent in the State of Texas, Registered Agent Solutions, Inc., at 1701 Directors Boulevard, Suite 300, Austin, Texas 78744.

### II. JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the amount in controversy exceeds $75,000.00,

excluding interests and costs. The Court should exercise jurisdiction over this action because it seeks a judgment declaring certain issues concerning the rights, status, and/or other legal relations of WRI, a Texas citizen, under a commercial lease of real property located in Texas. Dover is the owner of real property located at 11743 West Avenue, San Antonio, Texas, commonly known as the Parliament Square Shopping Center (the "Shopping Center"). Dover leased an approximately 57,149 square-foot building in the Shopping Center to WRI (the "Leased Premises"). Upon expiration of the lease, WRI surrendered possession of the Leased Premises. Shortly after WRI's surrender, Dover began alleging that WRI was in breach the lease. WRI's claims arise from Dover's allegation of breach which occurred, at least in part, in Texas. Therefore, for at least the reasons set forth above, Dover has purposely availed itself of the privilege of "doing business" in Texas.

4. Venue is proper in the Western District of Texas, San Antonio Division, under 28 U.S.C. §1391 (b)(2) because the Shopping Center is situated entirely in Bexar County, Texas, and, as pled above, a substantial part of the events giving rise to WRI's claims occurred in Bexar County.

### III. FACTUAL BACKGROUND

**A.  The Lease Agreement**

5. Dover is the owner of the Shopping Center and the Leased Premises. WRI is a wholly owned subsidiary of Weingarten Realty Investors ("Weingarten"), a Texas real estate investment trust. At issue in this lawsuit is a lease agreement between Dover and WRI with respect to the Leased Premises, which expired on December 31, 2020 ("the Lease").

6. The Lease was initially entered into between WRI's predecessor-in-interest, Skaggs Companies, Inc. ("Skaggs"), and Dover's predecessor-in-interest, Gulf States Properties, Co., Ltd. ("Gulf States") on May 1, 1975. *See* **Ex. 1** (Lease Agreement). The primary term of the

Lease commenced on January 1, 1976 and ran for 25 years (expiring on December 31, 2000). *See id.* at § 5. The Lease also provided Skaggs with the option to extend the term of the Lease for six consecutive terms of five years each (through December 31, 2030) upon the expiration of the primary term. *See id.*

7. In 1977, Skaggs and its affiliated entities entered into a series of assignments whereby Skaggs assigned its interest in the Lease to Skaggs-Albertson's, a general partnership, and then the Lease was ultimately assigned to Albertson's, Inc. ("Albertson's"). Albertson's then operated a grocery store in the Leased Premises until 2005 (including exercising the first option to extend the Lease upon expiration of the primary term). In 2005, Albertson's assigned its interest in the Lease to Parliament Square Center, Inc. ("Parliament"). *See* **Ex. 2** (Assignment of Assumption of Lease between Albertson's and Parliament) at p. 1.

8. Parliament is an affiliated entity of WRI and Weingarten. Upon assignment of the Lease to Parliament, Parliament exercised its option to extend the Lease for a second time (through December 31, 2010), and then extended it again for a third time after that (through December 31, 2015. *See* **Ex. 3** (Notice of assignment to Parliament and exercise of second option period); **Ex. 4** (Parliament's notice of exercise of third option period).

9. In a series of transactions between 2011 and 2012, Parliament assigned its interest in the Lease to Weingarten, and Weingarten ultimately assigned the Lease to WRI. *See* **Ex. 5** (Parliament assignment to Weingarten); **Ex. 6** (Weingarten assignment to WRI). In January 2015, WRI elected to exercise its option to extend the Lease for a fourth time (through December 31, 2020). *See* **Ex. 7** (WRI notice of exercise of fourth option).

**B.     The sublease to San Antonio's Incredible Pizza Company**

10.     Upon assignment of the Lease to Parliament in 2005, Parliament subleased the Leased Premises to Incredible Pizza Co.,[1] which styles itself as a family-friendly buffet-style pizza chain featuring family entertainment centers in its restaurants with amenities such as arcades and go-kart tracks.[2] As part of the sublease, Incredible Pizza Co. made certain modifications to the Leased Premises to accommodate the amenities it desired to put in the restaurant. The modifications included, among other things, the construction of additional walls and rooms, certain modifications to the electrical system, and the construction of balconies and mezzanines in certain locations. The terms of the Lease expressly allowed Incredible Pizza Co. to make alterations, modifications, and improvements to the Leased Premises, provided only that the alterations: (i) do not lessen the market value of the Leased Premises; (ii) the alterations are performed in a good and workmanlike manner; and (iii) that the alterations are completed in compliance with all applicable laws, ordinances, and regulations. *See* **Ex. 1** at § 12.

11.     Incredible Pizza Co. continued to operate in the Leased Premises through the beginning of 2020. However, in December 2019 and January 2020, Incredible Pizza Co. defaulted under its sublease, and WRI terminated possession of the Leased Premises in January 2020. Based, in part, on Incredible Pizza Co.'s default, WRI elected not to exercise the fifth option to extend the Lease, instead choosing to allow the Lease to expire by its own terms on December 31, 2020.

---

[1]     The Lease expressly provides that the lessee could sublease all or any part of the Leased Premises without the consent of Dover. *See* **Ex. 1** at § 19.

[2]     America's Incredible Pizza Co., *About the Company*, www.incrediblepizza.com, https://incrediblepizza.com/about/

## C. WRI's surrender of the Leased Premises and Dover's allegation of breach

12. WRI surrendered the Leased Premises to Dover prior to the expiration of the Lease, which Dover acknowledged occurred on or before December 21, 2020. *See* **Ex. 8** (Dec. 21, 2020 letter from Dover). Pursuant to the Lease, WRI was required to surrender the Leased Premises:

> "in the same condition in which the Leased Premises were originally received from Lessor at the commencement of the term of this Lease, **except as repaired, rebuilt, restored, altered, or added to as permitted or required by any provision of Lease** and except for ordinary wear and tear.

*See* **Ex. 1** at § 27 (emphasis added). Based on the express language of the Lease, WRI was not required to, and did not, remove or change any modifications or alterations that Incredible Pizza Co. made to the Leased Premises prior to surrendering it to Dover.

13. On December 21, 2020, Dover sent a letter to WRI asserting that WRI breached the Lease by surrendering the Leased Premises in a condition that "considerably lessened the market value of the leased premises." *See* **Ex. 8.** According to Dover, Incredible Pizza Co.'s construction of "numerous walls and rooms throughout the property" accounted for a "drastically lessened market value," although Dover provided no evidence of any decrease in market value (nor to date has Dover). *See id.* Dover followed up with a second letter on February 5, 2021 asserting that WRI was required to demolish interior walls in the Leased Premises and restore the space to "a marketable, open space configuration." *See* **Ex.** (Feb. 5, 2021 letter from Dover). Dover demanded that WRI immediately remit payment of more than $1,000,000 for the repairs and/or remediation work that Dover unilaterally deemed necessary.

14. The fact is that Lease does not impose any obligation on WRI to perform any of the repair and/or remediation work demanded by Dover. Dover's assertion to the contrary directly contradicts the plain language of the Lease, which allows WRI to surrender the Leased

Premises "as repaired, rebuilt, restored, altered, or added to." *See* **Ex. 1** at § 27. Despite the plain and unambiguous language of the Lease, Dover nonetheless has demanded in excess of $1,000,000 from WRI, requiring WRI to retain the undersigned counsel to bring this suit. WRI seeks a declaratory judgment under Federal Rule of Civil Procedure 57 and 28 U.S.C §§ 2201 and 2202 to construing the plain and unambiguous language of the Lease and declaring that WRI is not obligated to perform any remediation or repair work, that WRI is entitle to surrender the Leased Premises in their current condition, and that WRI is not in breach of the Lease.

## IV. CAUSES OF ACTION

A.  **Declaratory Judgment**

15. WRI repeats and re-alleges the allegations set forth in paragraphs 5 through 14 as if fully set forth herein.

16. When a federal court is sitting in diversity, federal law controls procedural matters, while state law governs substantive matters. *Solio Security, Inc. v. Cummings Eng'g Consultants, Inc.*, No. A-12-CA-722-SS, 2012 WL 13027556, at *7 (W.D. Tex. Oct. 1, 2012) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Republic Servs., Inc. v. Tex. Ecological Servs., Inc.*, 118 F. Supp.2d 775, 777 n.2 (S.D. Tex. 2000)). The purpose of a declaratory judgment action under federal law is to establish existing rights, statuses, or legal relationships. *See, e.g., Brister v. Faulkner,* 214 F.3d 675, 687 (5th Cir. 2000). Provided that federal courts otherwise have subject matter jurisdiction and an actual controversy is involved, a declaratory judgment is "a perfectly appropriate method for determining rights under a contract." *Republic Servs.*, 118 F. Supp.2d at 776; *In re B-727 Aircraft*, F.3d 264, 270 (5th Cir. 2001). Moreover, "[a] federal court may issue a declaratory judgment as to the parties' rights even if the parties' contract specifies a particular state's substantive law governs the contract." *Solio*, 2012 WL 13027556, at *7.

17. As explained above, this Court has diversity jurisdiction over this lawsuit, and an actual and substantial controversy indisputably exists here between WRI and Dover. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (explaining that for an actual controversy to exist, there must be an actual, substantial controversy between parties of sufficient immediacy and reality, not a hypothetical or abstract dispute). As stated, Dover has alleged that WRI breached the Lease and has demanded in excess of $1,000,000 to cure WRI's alleged breach. Therefore, this action is procedurally ripe for a declaratory judgment.

18. The substantive interpretation of WRI's obligations under the Lease, however, are governed in accordance with state law. *Solio,* 2012 WL 13027556, at *7. In this case, the Lease provides that it shall be governed and interpreted under the laws of the State of Texas. *See* **Ex. 1** at § 31. Therefore, WRI asks the Court to interpret and construe WRI's obligations under the Lease in accordance with principles of ordinary contract construction under Texas law and issue a declaratory judgment making the following declarations, which will determine certain issues related to the rights, status, and/or other legal relations of WRI and Dover:

(i) the Lease allows the lessee to make alterations or modifications to the Leased Premises;

(ii) the alterations and/or modifications made to the Leased Premises during the term of the Lease did not lessen the market value of the Leased Premises;

(iii) WRI is entitled to surrender the Leased Premises in its current condition, without performing, or incurring costs for the performance of, any remedial work, repair work, or any other work;

(iv) the Lease does not require WRI to return the Leased Premises to an "open space configuration;" and

(v) WRI has not materially breached any provision of the Lease upon surrendering the Leased Premises, including, without limitation, Articles 12 or 27.

## V. CONDITIONS PRECEDENT

19. Plaintiff has performed all conditions precedent for maintaining and recovering on its claims in this case.

## PRAYER

WHEREFORE WRI/Lone Star, Inc. respectfully requests that Dover Holding, LLC be cited to appear and, upon answer herein, that WRI be granted the declaratory relief requested with costs taxed to Dover. WRI prays for such other and further relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

**WINSTEAD PC**
401 Congress, Suite 2100
Austin, Texas 78701
Phone: (512) 370-2800
Fax:    (512) 370-2850
swhitehead@winstead.com
bwilson@winstead.com

By: */s/ Stewart Whitehead*
      G. Stewart Whitehead  SBN 00789725
      D. Blake Wilson        SBN 24090711

**ATTORNEYS FOR PLAINTIFF WRI/LONE STAR, INC.**